ARTISANS' INS. CO., (WASHBURN v.) See Case No. 17,212.

ARTMAN, (COMMONWEALTH OF PENNSYLVANIA v.) See Case No. 10,952.

---

## Case No. 569.

### The A. R. WETMORE.

### The EPSILON.

### [5 Ben. 147.][1]

District Court, E. D. New York. May, 1871.

COLLISION AT PIER—PLEADING—TOWBOAT AND TOW.

1. A steamboat was lying, properly moored, at a pier in the North river, in the harbor of New York. A schooner, in tow of a tug, was towed by the pier, when the tow-line parted, and the schooner, by force of the wind and tide, was carried against the steamboat. The owners of the steamboat filed a libel against both the schooner and the tug to recover the damage occasioned by the collision. The libel alleged no other facts than as above stated. The answer of the schooner admitted that the accident arose from the parting of the line, and that the schooner furnished the line, and averred that the line broke because it was not sufficient for towing the schooner stern foremost, and charged as a fault on the tug, the omission to take a second line. The answer of the tug denied that the breakage of the line arose from any act or neglect of the tug. The libellant proved only the facts alleged in his libel. Neither the schooner nor the tug offered any evidence whatever. Held, that, as the steamboat was lying moored at a pier, and unable to move or to do anything to prevent the collision, it was sufficient, as against the schooner, to aver that she ran into the steamboat.

[Cited in The Chickasaw, 38 Fed. 363.]

2. That, under the answer of the schooner, and in the absence of any evidence to the contrary, the schooner must be presumed to have been adrift by her own act, and must be held liable for the damage which she did by drifting against the steamboat.

3. That, as the schooner was not connected with the tug at the time of the collision, and the power which drove her into the steamboat was that of wind and tide, there was no presumption of responsibility for that act, against the tug; and that on the evidence there was no careless action shown to have been committed on her part.

[Cited in The Chickasaw, 38 Fed. 361.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

4. That the libel, therefore, must be dismissed as against the tug, and a decree rendered against the schooner.

In admiralty.

T. E. Stillman, for libellant.

R. D. Benedict, for The Epsilon.

C. Donohue, for The A. R. Wetmore.

BENEDICT, District Judge. On the 24th day of March, 1870, the steamboat Thomas P. Way, while lying properly moored at pier 27, in the Hudson river, inside the pier and on the upper side thereof, was run into by the schooner A. R. Wetmore, and sustained damages, to recover which this action is brought against the schooner, and also against the steamtug Epsilon.

The accident occurred in the day time, and on an ebb tide, when there was no current, or wind or ice, a fog, or other vessels, which in any way prevented or interfered with the proper navigation of the vessels proceeded against. The only material facts alleged in the libel are that the Thomas P. Way, when properly moored, as above stated, was run into and damaged by the schooner A. R. Wetmore, in consequence of the breaking of a hawser by which the schooner was being towed by the tug Epsilon. And upon these facts a decree is sought against the schooner, or the tug, or both.

In a case like this, where the injured vessel, owing to the fact that she was moored at a pier, was under no obligation to move, and unable to do anything to prevent or to cause the collision, it is doubtless sufficient, as against the schooner, to aver that she ran into the vessel so moored, (The Bothnia, 1 Lush. 52;) and where the circumstance, charged as occasioning the accident, is of such a nature as to render it impossible for the injured vessel to know which of two vessels is responsible for its occurrence, it may be permitted to state the case in the manner here adopted. In cases of this description, a decree may be rendered against one or both of the vessels proceeded against, as the evidence shall locate the fault causing the accident.

The answer of the schooner is meagre and uncertain. It seemingly concedes that the collision arose from the circumstance that the towing line parted, and it expressly admits that the schooner furnished the line. But it avers that the line broke because one line was not sufficient to tow the schooner stern foremost, and charges upon the tug, as a fault, the omission to take a second line. Under this answer there must be a decree against the schooner, unless she show negligence on the part of the tug, in towing the schooner stern foremost with a single line; and for this purpose she may resort to any evidence in the cause, and to any averment in the libel or in the answer of the tug. Neither the libel nor the answer of the tug states that it was improper to tow the schooner stern foremost, or that such a

method of towing required a stronger line than the one used, or that the tug was responsible for the employment of the line that was used. The defence of the schooner must, therefore, be sought for in the evidence. But no evidence whatever was introduced by either the schooner or the tug, and the evidence of the libellant is as silent as the libel in respect to any matter of defence set up by the schooner.

In the absence of any evidence to the contrary, the schooner must be presumed to have been adrift by her own act—and here there is no evidence tending to prove the matters which the schooner has set up in her answer, and nothing in the evidence or the pleadings to rebut that presumption. It follows, therefore, that the schooner must be held liable to pay for the damage which she admits having done by drifting into a vessel properly moored at a pier.

The case against the tug is different, and she has put in a separate defence. The libel admits, and the evidence proves, that the damage sued for was done by the schooner, which was at the time unconnected with the tug, and that the power, which drove the schooner into the libellant's vessel, was that of the wind and tide, and not power derived from the tug. No presumption of responsibility for the act of the schooner can therefore arise against the tug, and, to render her liable, some neglect on her part, which placed the schooner adrift, must be shown. The answer of the tug admits her employment to tow the schooner, and that, while so employed, the schooner became detached from her by the breaking of the line—but it denies that the same arose from any act or neglect of the tug, and it contains no admission which will serve to fasten upon the tug a responsibility either for the breaking of the line or for its condition. In the evidence there is nothing tending to show any careless action or undue strain which would break a line.

Upon these pleadings and proofs I am unable to see how the libellant can ask a decree against the tug. The only ground put forth on the argument was that the answer of the tug admits the insufficiency of the line. Assuming this admission to be contained in the answer, or conceding that on the evidence the fact appears that the schooner became adrift by reason of the insufficiency of the line, still, in order to charge the tug, it must appear that she was responsible for that insufficiency.

The evidence discloses no strain put upon the line which a sound line would not bear; nor does any witness say that the mode adopted for towing the schooner called for a stronger line than would have been required to tow her bow first. The fair inference from the evidence is that the schooner became adrift because of the unsoundness of the line; but whether the line was unsound or was too light for the work, the responsi-

bility is the same upon these proofs, inasmuch as the schooner admits that the line was hers, furnished by her for the purpose of being towed by it. I am of the opinion, therefore, that no case is made out against the tug, and that the libellant is entitled to a decree against the schooner alone for the amount of his damage.